## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE LUIS MORA BEDOLLA
3081 Main Street
Morgantown, PA 19543

    - and -

ANDRES MARTIN JURADO PEREZ
2428 Miller Avenue
Coatesville, PA 19320,

                Plaintiffs,

      v.

LEWIS J. BRANDOLINI, III
1337 Art School Road
Chester Springs, PA 19425

    - and -

BRANDOLINI COMPANIES
1301 Lancaster Avenue
Berwyn, PA19312

            Defendants.

CIVIL ACTION

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, Jose Luis Mora Bedolla ("Bodella") and Andres Martin Jurado Perez ("Perez") (collectively, "Plaintiffs"), file this Complaint against Defendants, Lewis J. Brandolini, III ("Brandolini") and Brandolini Companies ("Brandolini Cos.") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Act, ("WPCL"), 43 P.S. § 260.1 *et seq*., and the common law.  The following allegations are based on personal knowledge as to Plaintiffs' own

conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.     This action arises out of Defendants' deliberate and willful retaliation against Plaintiff Bedolla for complaining, both verbally and in writing, about not being paid overtime compensation by Defendants for all hours worked in excess of 40 in a workweek.  Plaintiff Bedolla alleges that Defendants' actions amount to unlawful retaliation and the intentional infliction of emotional distress, in violation of the FLSA and common law.  *See* Counts I and II, respectively.  As a result of Defendants' action, Plaintiff Bedolla is entitled to: (i) compensatory damages for pain and suffering; and (ii) punitive damages.

2.     *Second*, Plaintiff Bedolla brings this action for recovery of overtime compensation pursuant to the FLSA and PMWA.  *See* Counts III and VI, respectively.  Plaintiff Perez – Plaintiff Bedolla's former colleague – joins in this cause of action.  Throughout their employment with Defendants, Plaintiffs worked in excess of 40 hours in a workweek but were denied premium overtime compensation by Defendants for such hours worked.  Defendants' systematic failure and refusal to pay Plaintiffs for the hours worked over 40 in a workweek violates the FLSA and PMWA.  Plaintiffs allege that they are entitled to: (i) unpaid overtime compensation for all hours worked above 40 in a workweek, as required by law, earned at any time from the period three years prior to commencement of this action through to their last day of employment with Defendants; (ii) liquidated damages; (iii) prejudgment interest; and (iv) attorney's fees and litigation expenses, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., PMWA, 43 P.S. §§ 333.101, *et seq*., and 43 P.S. § 260.1 *et seq.*

3.     *Third*, Plaintiff Bedolla brings this action under the FLSA and PMWA for recovery of unpaid minimum wages pursuant to the FLSA and PMWA.  *See* Counts V and VI,

respectively.  Plaintiff Bedolla was not paid minimum wages by Defendant for work performed on his last day of employment.  Defendants' failure and refusal to pay Plaintiff Bedolla for such work violates the FLSA and PMWA.  Plaintiff Bedolla alleges that he is entitled to: (i) unpaid minimum wages for all hours worked on the last day of his employment, as required by law; (ii) liquidated damages; (iii) prejudgment interest; and (iv) attorney's fees and litigation expenses, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., PMWA, 43 P.S. §§ 333.101, *et seq*., and 43 P.S. § 260.1 *et seq.*

## THE PARTIES

### *Plaintiff Jose Luis Mora Bedolla*

4.     Jose Luis Mora Bedolla resides in Morgantown, Pennsylvania.   From approximately June 2014 until approximately September 11, 2017, he was employed by Defendants as a landscaper working at Defendant Brandolini's family residences in Chester Springs, Pennsylvania and Glenmore, Pennsylvania (both located in Chester County).

5.     Plaintiff Bedolla worked in excess of 40 hours per workweek without receiving premium overtime compensation for all hours worked, as required by the FLSA and PMWA.

6.     Plaintiff Bedolla also was not paid minimum wages for all regular hours worked, including on his last day of employment with Defendants, as required by the FLSA and PMWA.

7.     In addition, Plaintiff Bedolla's employment was terminated by Defendants in retaliation for him complaining about not being paid overtime compensation, in violation of the FLSA.

8.     Plaintiff Bedolla's consent to join this action is attached as Exhibit A.

### *Plaintiff Andres Martin Jurado Perez*

9.     Andres Martin Jurado Perez resides in Coatesville, Pennsylvania.   From

approximately January 2015 until approximately April 2017, he was employed by Defendants as a landscaper working at Defendant Brandolini's family residences in Chester Springs, Pennsylvania and Glenmore, Pennsylvania (both located in Chester County).

10.     Plaintiff Perez worked in excess of 40 hours per workweek without receiving premium overtime compensation for all hours worked, as required by the FLSA and PMWA.

11.     Plaintiff Perez also was not paid minimum wages for all regular hours worked, including on his last day of employment with Defendants, as required by the FLSA and PMWA.

12.     Plaintiff Perez's consent to join this action is attached as Exhibit B.

*Defendants*

13.     Upon information and belief, Lewis J. Brandolini, III resides in Chester Springs, Pennsylvania and owns, or owned, several properties located in Chester Springs, and Glenmore, Pennsylvania (both located in Chester County).

14.     At all relevant times, Bandolini was the Owner, Chairman and Chief Executive Officer of Defendant Brandolini Cos.

15.     Upon information and belief, Defendant Brandolini Cos. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1301 Lancaster Avenue, Berwyn, PA 19312 (Chester County).

16.     Brandolini Cos. is a "diversified real estate organization that develops, owns and operates a varied portfolio of properties," including several shopping centers in Pennsylvania. *See* http://www.brandolinicompanies.com/About%20Us.html, last accessed on January 10, 2018.

17.     Defendants are covered employers within the meaning of the FLSA and PMWA, including the anti-retaliation provision of the FLSA.

18.     At all relevant times, Defendants have been, and continue to be, an enterprise

engaged in commerce for purposes of the FLSA and PMWA.

19.     Defendants each employed (or acted in the interest of an employer towards) Plaintiffs and (directly or indirectly, jointly or severally) controlled and directed the terms of their employment and compensation.

20.     Upon information and belief, the Defendants operated in concert and together in a common enterprise and through related activities, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA and PMWA.

21.     Defendants each had the power to control the terms and conditions of employment of Plaintiff and other similarly-situated current and former CSMs including, without limitation, those terms and conditions relating to the claims alleged herein.

22.     Defendants jointly employed Plaintiffs.

## JURISDICTION AND VENUE

23.     This Court has matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

24.     This Court has jurisdiction over Plaintiffs' PMWA and common law claims pursuant to 28 U.S.C. §§ 1367(a).

25.     Defendants are subject to personal jurisdiction in Pennsylvania.

26.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) since the events or omissions giving rise to the claims in this Complaint occurred within this District.

27.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

28.     For several years, Plaintiffs were employed by Defendants to perform general landscaping, gardening, and similar maintenance (or up-keep) work at Defendant Brandolini's family residences in Chester Springs, Pennsylvania and Glenmore, Pennsylvania.

29.     As part of their day-to-day job duties, Plaintiffs mowed the lawns, planted flowers, pruned bushes, tended to garden beds, cleaned paths, shoveled snow, manicured the grounds, chopped firewood, and otherwise performed general up-keep under the direction and supervision of Defendants and their agents.

30.     Upon being hired by Defendants, Plaintiffs were told that they would be paid on an hourly-basis and the hours they worked each week would be recorded for payroll purposes.

***Defendants' Timekeeping System***

31.     Upon commencing his employment with Defendants, Plaintiff Bedolla was instructed to record the hours he worked using a paper timecard.

32.     Plaintiff Bedolla was issued with timecards by Defendants and, on a daily basis, would physically write the hours he worked on the timecards.  Plaintiff Bedolla submitted his timecards bi-weekly to Defendants for payroll purposes.

33.     In or about December 2015 or January 2016, Plaintiff Bedolla was informed by his supervisor that Defendants were changing the way his hours were being recorded – Defendants would now record be responsible for recording his work hours, based upon their observations, and Plaintiff Bedolla was no longer required to.

34.     Finally, in or about June 2017, Plaintiff Bedolla was informed by Defendants that the timekeeping system would be changed again, this time to permit Plaintiff to use a timecard to stamp the hours he worked each week, which he would then submit to Defendants.

6

35.     Similarly, and because he worked solely during the period of time when Defendants were responsible for recording each landscaper's work hours, Plaintiff Perez's hours were recorded solely by his supervisor.

36.     Plaintiffs were paid based on the number of hours recorded on their timecards.

**_Plaintiffs' Compensation and Work Hours_**

37.     Plaintiff Bedolla's starting hourly-wage was approximately $17.25 per hour, which rose to approximately $23.67 per hour in 2016, and again to approximately $24.67 in 2017, where it remained until his employment was terminated by Defendants in approximately September 2017.

38.     Similar to Bedolla, Plaintiff Perez's starting hourly-wage was approximately $17.25 per hour, which rose to approximately $23.67 per hour in 2016, and again to approximately $24.67 in 2017, where it remained until his employment was terminated by Defendants in approximately April 2017.

39.     Throughout their employment with Defendants, Plaintiffs worked significant overtime hours each week.  On average, Plaintiffs worked approximately 55-60 (or more) hours per work week.

40.     Plaintiffs typically worked the following hours each week: approximately 7:00 a.m. – 5:00 p.m. Monday through Friday, and approximately 7:00 a.m. – 12:00 p.m. on Saturday (which later changed to approximately 8:00 a.m. – 1:00 p.m.).  Plaintiffs occasionally worked after 5:00 p.m. on the weekdays to finish their assigned tasks.

41.     Plaintiffs were required to submit their timesheets bi-weekly to Defendants.

42.     Plaintiffs were paid on a bi-weekly basis by Defendants.

43.     In accordance with Defendants' directions, during the first few months of his employment Plaintiff Bedolla recorded all hours he worked on his timecard.  *See e.g.*, Exhibit C, at BEDOLLA00002 (reflecting that for the bi-weekly period between August 14, 2015 and August 27, 2015, Plaintiff Bedolla was paid for having worked approximately 135 hours).

44.     In fact, based on his pay stubs, between approximately August 2015 and December 2015 Plaintiff Bedolla was paid for having worked, on average, approximately 110 hours during each bi-weekly pay period (or approximately 55 hours each work week).  *See* Exhibit C, at BEDOLLA000001-BEDOLLA000008.

45.     Notwithstanding this, and also as evidenced by Plaintiff Bedolla's pay stubs, between August 2015 and December 2015 he was not paid premium overtime compensation at the legally mandated rate of one and a half times his regular hourly-rate for all hours worked in excess of 40 in a workweek.

46.     Rather, Plaintiff Bedolla was paid his regular hourly-rate.  *See* Exhibit C, at BEDOLLA000007 (indicating that for the period between November 5, 2015 and November 19, 2015, Plaintiff Bedolla was paid $1,897.50 for working 110 hours at his regular hourly rate of $17.25 – that is, 110 x 17.25 = 1,897.50).

47.     Instead, Plaintiff Bedolla should have been paid $2,156.25 during this period.[1]

48.     In connection with the change in Defendants' timekeeping system in or around December 2015 or January 2016, Plaintiffs' supervisor was responsible for recording the hours that Plaintiffs worked each week, and submitting them for payroll purposes.

---

[1] That is, 80 hours at the regular rate of $17.25 ($1,380), plus 30 hours at the overtime rate of one and a half times $17.25, or $25.875 ($776.25), for a total of $2,156.25.

49.     However, Plaintiffs' hours were deliberately under-recorded by Defendants and, as a result, their paystubs reflect that they worked only 40 hours in a workweek (or 80 hours for each bi-weekly payroll period), even though they continued to work significantly more hours.

50.     Defendants deliberate act to under-record the hours Plaintiffs worked was designed to reduce the cost of payroll and save Defendants money.

51.     For example, and despite having recording that he worked overtime during approximately the same period in 2015, in both August 2016 and August 2017 Plaintiff Bedolla was paid for having worked only 40 hours in a workweek, even though he worked significantly more hours than this.   *See* Exhibit C, at BEDOLLA00009-BEDOLLA000011, and BEDOLLA000013-BEDOLLA000014.

52.     In addition, during the periods May 6, 2016 to May 19, 2016, June 3, 2016 to June 16, 2016, and August 12, 2016 to August 25, 2016, Plaintiff Perez was recorded as having worked only 40 hours in a workweek, or 80 hours in each two-week period, even though he also worked significantly more hours.   *See e.g.*, Exhibit D, at PEREZ000001, and PEREZ000004-PEREZ000005; *see also* Exhibit D, at PEREZ000002-PEREZ000003 (evidencing that Plaintiff Perez was similarly paid for working only 80 hours during additional periods of time, even though he worked significantly more hours).

53.     As a result, throughout their employment, Defendants failed to pay Plaintiffs premium overtime compensation as required by the FLSA and PMWA.[2]

---

[2] Plaintiffs' pay stubs reflect that they were both paid $1091.65 for 37.0050 "overtime" hours on December 9, 2016 (approximately two weeks before Christmas 2016).   *See* Exhibit C, at BEDOLLA000012, and Exhibit D, at PEREZ000004.  However, upon information and belief, this was actually a holiday bonus paid by Defendants and not, as the paystubs indicate, compensation for overtime hours worked by Plaintiffs.

54.    Because Plaintiffs worked together, along with an additional landscaper employed by Defendants, they know that they each worked similar hours, performed the same job duties, were subject to the same supervision and direction by Defendants, were not permitted to record having worked overtime, and were subject to Defendants' same policy of intentionally and willfully depriving Plaintiffs of all overtime compensation due and owing to them.

55.    At all times throughout their employment, Plaintiffs were required to, and did, comply with Defendants' directions, and otherwise completed their job duties in accordance with Defendants' instructions and to Defendants satisfaction.

56.    Notwithstanding this, on or about approximately April 2017, Plaintiff Perez's employment was abruptly terminated by Defendants.  At the same time, a third landscaper's employment was also terminated by Defendants.

57.    As a result of the aforementioned terminations, Plaintiff Bedolla was directed by Defendants to complete some of the tasks of the recently-terminated employees, in addition to his own.

58.    Prior to completing such work, Plaintiff Bedolla indicated that he would be required to work additional overtime hours in order to do so, which he subsequently did for approximately the next one to two weeks.

***Defendants' Retaliatory Action Against Plaintiff Bedolla***

59.    Plaintiff Bedolla requested that Defendants pay him additional compensation in order to reflect the additional overtime hours he would be required to work in order to complete the aforementioned, which Defendants (through their agent, Andrew (last name unknown)), agreed to.

60.     Upon information and belief, Andrew is Defendant Brandolini's step-son and was also responsible for supervising and directing Plaintiffs' work.

61.     However, Defendants failed to follow through on their promise, and Plaintiff Bedolla did not receive any additional compensation from Defendants for working additional overtime hours, including overtime compensation.

62.     Thereafter, Plaintiff Bedolla attempted to raise Defendants' non-payment of overtime with his supervisor.   Unfortunately, his complaints were ignored and Defendants refused to address his concerns.

63.     On or about May 31, 2017, Plaintiff Bedolla wrote to Defendant Brandolini and requested that Defendants pay him overtime compensation for the overtime hours he had been required to work throughout his employment with Defendants.   Plaintiff Bedolla personally handed his letter to Defendant Brandolini.

64.     Plaintiff Bedolla wrote, in part:

> "I am writing this letter to [Defendant Brandolini] in regards of my salary … I have been analyzing the situation, and I realized that I work around 110 hours biweekly.  In my pay stubs it appears that I only work 80 hours … I would like to ask you if you could please raise my pay rate, *or pay me my overtime hours*." (emphasis added).

65.     Notwithstanding Plaintiff Bedolla's complaint about not receiving overtime compensation for working approximately 110 hours biweekly, Defendants failed to pay Plaintiff Bedolla overtime compensation for the overtime hours he had already worked, or the overtime hours he continued to work.

66.     Thereafter, Defendants embarked on a retaliatory course of action against Plaintiff Bedolla.

67.     First, on or about early September 2017, Defendant Brandolini angrily confronted Plaintiff Bedolla and accused him of engaging in a host of improper activities while working for Defendants, including damaging certain of Defendants' property, and misusing a credit card to purchase gas for a work vehicle.

68.     Defendants' allegations, however, were knowingly false, and were designed to intimidate and retaliate against Plaintiff Bedolla for complaining about not being paid overtime.

69.     Second, on September 9, 2017, Plaintiff Bedolla was summoned to a meeting with his supervisor, Andrew.  Also present at the meeting was Plaintiff Bedolla's daughter, Sandra.

70.     During the meeting, Andrew indicated that a work vehicle that had previously been assigned to Plaintiff Bedolla for use in traveling to and from his home to work would no longer be made available by Defendants.

71.     Plaintiff Bedolla had used the vehicle for several years, and Defendants knew that revoking the privilege would cause undue hardship and make it impossible for Plaintiff Bedolla to turn up for work on time in the immediate future.

72.     Andrew also indicated that Defendants would not be paying Plaintiff Bedolla overtime compensation.  Andrew indicated, with words to the effect: "You are being paid enough."

73.     In addition, Andrew justified Defendants' refusal to pay Plaintiff Bedolla overtime compensation on the basis that he was being paid more money than Andrew.

74.     As anticipated, Plaintiff Bedolla arrived at work on September 11, 2017 approximately forty-five minutes after his regularly scheduled start time.

75.     Plaintiff Bedolla remained at work for approximately 4 to 5 hours and, after he had completed his assigned duties, his employment was abruptly terminated by Defendants, effective immediately.

76.     Defendants told Plaintiff Bedolla that his employment was terminated because he was late for work, even though Defendants were aware that Plaintiff Bedolla would likely be late for work.

77.     Plaintiff Bedolla was not paid for the hours he worked on the last day of his employment with Defendants.

78.     While the pretense for Plaintiff Bedolla's termination was that he arrived for work after his regularly scheduled start time, Plaintiff was actually terminated by Defendants for complaining about not receiving overtime compensation.

79.     Plaintiff Bedolla's written and verbal complaints about not receiving overtime compensation was the motivating factor behind, and led directly to, Defendants' retaliatory action, up to and including his termination of employment.

80.     As a result of Defendants' retaliatory actions, Plaintiff Bedolla is unemployed and fearful that he will not be able to find future employment.

81.     Plaintiff Bedolla is embarrassed and ashamed that his employment was terminated and that he is unemployed, and is constantly stressed about money and his ability to buy food for his family and pay household bills.

82.     Plaintiff and his wife constantly argue about their financial situation, which has led to marital discord (where there was none before).

83.     Plaintiff Bedolla is under constant stress and has trouble sleeping at night.

84.     Plaintiff Bedolla is easily irritated and worries that he is no longer "good enough" for his family.

85.     Thoughout their employment, Defendants were aware that Plaintiffs worked more than 40 hours per workweek, yet failed to pay them overtime compensation for any of the hours worked over 40 in a workweek.

86.     In addition, Defendants failed to keep accurate records of the hours that Plaintiffs worked.

87.     Plaintiffs were closely supervised by Defendants and their agents, who monitored and directed their work on a daily basis, and Defendants have been aware of all of the work that Plaintiffs performed.

88.     Plaintiffs' primary duty was the performance of non-management work.

89.     Defendants were aware, or should have been aware, that Plaintiffs' primary duties were mowing the lawns, planting flowers, pruning bushes, tending to garden beds, cleaning paths, shoveling snow, chopping firewood, and otherwise manicuring the grounds and performing general up-keep.

90.     Defendants were also aware that the aforementioned duties do not fall within any of the overtime exemptions to the FLSA and PMWA.

91.     Defendants were aware, or should have been aware, that the FLSA and PMWA required them to pay Plaintiffs overtime compensation for hours worked in excess of 40 per week, as well as all minimum wages.

92.     Defendants' failure to pay Plaintiffs all wages due and owing to them, including overtime, was willful, and Defendants' unlawful conduct has been pervasive and consistent.

93.     Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and PMWA with respect to Plaintiffs.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT:  UNLAWFUL RETALIATION**
**(ON BEHALF OF PLAINTIFF BEDOLLA)**

94.     All previous paragraphs are incorporated as though fully set forth herein.

95.     Defendants engaged in a pattern or practice of willfully denying Plaintiffs all overtime compensation due and owing to them.

96.     Plaintiff's written and verbal complaints regarding Defendants' failure to pay him overtime compensation were protected activities under the FLSA § 215(a)(3).

97.     Defendants retaliated against Plaintiff Bedolla for complaining about their non-payment of overtime, in violation of FLSA § 215(a)(3).

98.     Plaintiff Bedolla's complaints to Defendants for the payment of unpaid overtime compensation were the motivating factor for Defendants' adverse employment actions against Plaintiff.

99.     Defendants' retaliatory actions against Plaintiff Bedolla were willful and intentional, and were, at a minimum, undertaken with malice or reckless indifference to Plaintiff Bedolla's federally protected rights.

100.    Defendants' retaliatory actions were malicious as they were undertaken with knowledge that they violated federal laws against retaliation.

101.    Defendants' retaliatory actions were undertaken with reckless indifference as they were undertaken with knowledge that they might violate federal laws against retaliation.

102.    Defendants' retaliatory actions were extreme and outrageous and warrant the imposition of punitive damages.

103.   As a result of Defendants' retaliatory actions against Plaintiff Bedolla, Plaintiff Bedolla has been deprived of continued employment, future earnings (including future overtime compensation), and other monetary and non-monetary benefits, and Plaintiff Bedolla has suffered severe emotional and psychological distress, mental anguish, and loss of self-esteem, and Plaintiff Bedolla is entitled to reinstatement as a landscaper with Defendants, damages in amounts to be determined at trial, including liquidated damages, compensatory and punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**SECOND CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ON BEHALF OF PLAINTIFF BEDOLLA)**

104.   All previous paragraphs are incorporated as though fully set forth herein.

105.   Defendants' retaliatory actions against Plaintiff Bedolla were willful and intentional or, at a minimum, reckless.

106.   Defendants' retaliatory actions were extreme and outrageous and go beyond all possible bounds of decency and acceptable behavior.

107.   Plaintiff Bedolla's written and verbal complaints to Defendants regarding their non-payment of overtime compensation as the motivating factor for Defendants' adverse employment actions against Plaintiff.

108.   Defendants' retaliatory actions caused Plaintiff Bedolla to suffer severe emotional and psychological distress, mental anguish, and loss of self-esteem, among other things.

109.   As a result of Defendants' retaliatory actions against Plaintiff Bedolla, Plaintiff Bedolla is entitled to damages in amounts to be determined at trial, including compensatory and punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-

judgment interest.

### THIRD CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT:  UNPAID OVERTIME WAGES
### (ON BEHALF OF PLAINTIFFS)

110.    All previous paragraphs are incorporated as though fully set forth herein.

111.    Defendants have engaged in a pattern and practice of violating the FLSA, as described in this Complaint.

112.    Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

113.    At all relevant times, Defendants have been, and continue to be, an employer engaged in commerce within the meaning of 29 U.S.C. § 207(a).

114.    At all relevant times, Plaintiffs are, or were, employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

115.    The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

116.    At all relevant times, Defendants had a policy and practice of refusing to pay premium overtime compensation to Plaintiffs for hours worked in excess of 40 hours in a workweek.

117.    Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.  Defendants failed to make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs.

118.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies to this First Cause of Action, pursuant to 29 U.S.C. § 255.

119.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered

17

damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

120.    As a result of Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT:  UNPAID OVERTIME WAGES**
**(ON BEHALF OF PLAINTIFFS)**

121.    All previous paragraphs are incorporated as though fully set forth herein.

122.    At all times relevant to this action, Plaintiffs were employees and Defendants have been employers within the meaning of the PMWA.

123.    The overtime wage provisions of the PMWA and its supporting regulations apply to Defendants.

124.    The PMWA entitles employees to compensation for every hour worked in a workweek.  *See* 43 P.S. § 333.104(a).

125.    The PMWA and 34 Pa. Code § 231.41 entitles employees to overtime compensation at a rate "not less than one and one-half times" the employee's regular pay rate for all hours worked over 40 in a workweek.  *See* 43 P.S. § 333.104(c).

126.    Defendants violated the PMWA by failing to pay Plaintiffs premium overtime premium compensation for hours worked in excess of 40 during the workweek.

127.    As a result of Defendants' violations of the PMWA, pursuant to 43 P.S. § 333.113 Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.  Plaintiffs are also entitled to recover liquidated damages pursuant to 43 P.S. § 260.10.

### FIFTH CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT:  UNPAID MINIMUM WAGES
### (ON BEHALF OF PLAINTIFF BEDOLLA)

128.    All previous paragraphs are incorporated as though fully set forth herein.

129.    Defendants have engaged in a pattern and practice of violating the FLSA, as described in this Complaint.

130.    At all relevant times, Defendants have been, and continue to be, an employer engaged in commerce within the meaning of 29 U.S.C. § 206(a).

131.    The minimum wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

132.    At all relevant times, Plaintiff Bedolla was an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

133.    Defendants failed to pay Plaintiff Bedolla the minimum wages to which he was entitled under the FLSA.

134.    As a result of Defendants' violations of the FLSA, Plaintiff Bedolla has suffered damages by being denied minimum wages in accordance with 29 U.S.C. §§ 201 *et seq.*

135.    As a result of Defendants' violations of the FLSA, Plaintiff Bedolla is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### SIXTH CLAIM FOR RELIEF
### PENNSYLVANIA MINIMUM WAGE ACT:  UNPAID MINIMUM WAGES
### (ON BEHALF OF PLAINTIFF BEDOLLA)

136.    All previous paragraphs are incorporated as though fully set forth herein.

137.    The minimum wage provisions of the PMWA and its supporting regulations apply to Defendants.

138.    The PMWA entitles employees to compensation for every hour worked in a workweek.  *See* 43 P.S. § 333.104(a).

139.    Defendants violated the PMWA by failing to pay Plaintiff Bedolla all minimum wages due and owing to him for work performed for the benefit of Defendants, including on the last day of his employment with them.

140.    As a result of Defendants' violations of the PMWA, pursuant to 43 P.S. § 333.113 Plaintiff Bedolla is entitled to recover from Defendants his unpaid wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.  Plaintiff is also entitled to recover liquidated damages pursuant to 43 P.S. § 260.10.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek an order providing for the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

b.    An award of compensatory damages for pain and suffering as a result of Defendants' retaliatory action against Plaintiff Bodella;

c.    An award of punitive damages as a result of Defendants' retaliatory action against Plaintiff Bodella;

d.    Reinstatement of Plaintiff Bedolla to his former position with Defendants;

e.    An award of unpaid premium compensation for all hours worked in excess of 40 in a workweek at a rate of one and one-half times the regular rate of pay due under the FLSA and PMWA;

f.    An award of unpaid minimum wages for all hours worked at 40 or less in a workweek times the regular rate of pay due under the FLSA and PMWA;

20

g.      An award of liquidated damages as a result of Defendants' willful failure to pay for all hours worked at either the regular or overtime rate of pay pursuant to 29 U.S.C. § 216 and 43 P.S. § 260.10;

h.      An award of damages representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i.      An award of prejudgment and post-judgment interest;

j.      An award of attorneys' fees, and costs and expenses of this action; and

k.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Date:   January 12, 2018
        Philadelphia, Pennsylvania

Respectfully Submitted,

Jason Conway (PA I.D. No. 317113)
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Facsimile: (215) 278-4807
E-mail: jconway@conwaylegalpa.com

*Attorney for Plaintiffs*