IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE BEDOLLA, and ANDRES MARTIN<br><br>Plaintiffs,<br><br>v.<br><br>LEWIS J. BRANDOLINI, III, and BRANDOLINI COMPANIES<br><br>Defendants. | CIVIL ACTION<br><br>NO. 18-146 |

**Baylson, J.**                                                             **May 18, 2018**

**MEMORANDUM RE: MOTION TO DISMISS AMENDED COMPLAINT**

**I.   Introduction**

At issue in this employment case is whether the Court should grant a motion to dismiss filed by Defendants, Lewis J. Brandolini, III ("Brandolini") and Brandolini Companies ("BC"), pursuant to Fed. R. Civ. P. 12(b)(6).

For reasons discussed below, the Motion to Dismiss will be DENIED.

**II.   Relevant Factual[1] History**

    **A.  The Parties**

Plaintiffs in this case, Jose Luis Mora Bedolla ("Bedolla") and Andres Martin Jurado Perez ("Perez") allege that they worked at Defendant Brandolini's family residences in Chester County to perform general landscaping, gardening, and similar maintenance work. (ECF 5, Amended Complaint ("AC"), ¶¶ 4, 10, 59).[2] Both Plaintiffs allege that they worked in excess of

---

[1] In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).

[2] Bedolla alleges that he worked from June 2014 to September 2017, and Perez alleges that he worked from January 2015 to April 2017.

1

forty hours per workweek without receiving premium overtime compensation or minimum wages for all hours worked.

Defendant BC is a diversified real estate organization that develops, owns and operates a portfolio of properties. (Id. ¶ 28). Defendant Brandolini was, at all relevant times, the Owner, Chairman, and CEO of Defendant BC. (Id. ¶ 30).

### B. Joint Employment

Plaintiffs allege that the terms of their employment and compensation were jointly controlled and directed by Defendants. (Id. ¶ 34). Plaintiffs' compensation information was held by BC's payroll service, with BC's administrative staff assisting in the payroll process. (Id. ¶ 47). Plaintiffs' paystubs list the address for BC as their "company code," while listing Brandolini himself as the top line of the "company code." (Id.). BC "required or permitted" Brandolini to use shirts and jackets bearing its logo for Plaintiffs to wear while working, thus "requiring or permitting Plaintiffs to hold themselves out to the world as employees of the former." (Id. ¶¶ 50-51).

Upon Plaintiffs' hiring, they were told they would be paid on an hourly basis, with the hours they worked each week recorded for payroll purposes. (Id. ¶ 61). At the beginning of the relevant time period, Plaintiff Bedolla was instructed by Defendant Brandolini to record the hours he worked using a paper time period, with the hours submitted bi-weekly. (Id. ¶ 62-63). Around the beginning of 2016, Plaintiff Bedolla "was informed by his supervisor" that Plaintiff Bedolla did not need to record his hours anymore, but that he would still be paid. (Id. ¶ 64). Plaintiff Perez's hours were recorded solely by his supervisor. (Id. ¶ 66).

### C. Plaintiff Bedolla's Allegations of Retaliation and Emotional Distress

In approximately April, 2017, Plaintiff Perez's employment, as well as that of a third landscaper, was abruptly terminated by Defendants. (Id. ¶ 88). As a result, Plaintiff Bedolla was

directed to complete some of the recently-terminated employees' tasks. (Id. ¶ 89). Plaintiff Bedolla asked Defendant Brandolini's step-son—who was also responsible for supervising Plaintiffs' work—for additional compensation to reflect the overtime hours he would be required to work to complete the tasks. (Id. ¶ 91). Then Plaintiff Bedolla complained to his supervisor, but his complaints were ignored. (Id. ¶ 94). At the end of May, 2017, Plaintiff Bedolla handed a letter to Defendant Brandolini requesting overtime compensation. (Id. ¶¶ 95-96).

In early September, 2017, Defendant Brandolini confronted Plaintiff Bedolla and accused him of engaging in a variety of improper activities while working for Defendants. (Id. ¶ 100). Plaintiff contends that these allegations were knowingly false, and intended as retaliation for the complaint made four months earlier. (Id. ¶ 101). At a meeting on September 9, 2017, Plaintiff Bedolla attended a meeting with Brandolini's step-son and daughter, during which he was told that a work vehicle previously available for his use in traveling to and from work would no longer be available to him, and that he would not receive overtime compensation. (Id. ¶¶ 103, 105).

On September 11, 2017, Plaintiff Bedolla arrived at work forty-five minutes late, and, after working approximately five hours, was abruptly terminated from his job for being late to work. (Id. ¶ 109). Plaintiff Bedolla was not paid for the hours he worked on his last day, and alleges that his tardiness was not the actual reason for his termination, but rather a pretense. (Id. ¶ 111). Instead, Plaintiff Bedolla alleges that he was actually terminated for complaining about not receiving overtime compensation. (Id.).

As a result of his termination, Plaintiff Bedolla is unemployed, embarrassed, ashamed, and stressed about his financial situation, resulting in his being easily irritated and having difficulty sleeping at night. (Id. ¶¶ 113-117).

**III.     Relevant Procedural History**

On January 12, 2018, Plaintiffs filed a Complaint against Defendants. (ECF 1). On February 13, 2017, Defendants filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 3), to which Plaintiffs filed a response (ECF 4) before availing themselves of their leave to amend as of right and filing an Amended Complaint on March 2, 2018 (ECF 5). Defendants timely filed a subsequent Rule 12(b)(6) motion to dismiss on March 16, 2018 (ECF 7, "MTD"), to which Plaintiffs responded on March 19, 2018 (ECF 8).

Plaintiffs' allegations against Defendants are as follows:

| | | |
|---|---|---|
| Count I: | Unlawful Retaliation (Plaintiff Bedolla) |
| Count II: | Intentional Infliction of Emotional Distress (Plaintiff Bedolla) |
| Count III: | Violation of FLSA Unpaid Overtime Wages (Both Plaintiffs) |
| Count IV: | Violation of PMWA Unpaid Overtime Wages (Both Plaintiffs) |
| Count V: | Violation of FLSA Unpaid Minimum Wages (Plaintiff Bedolla) |
| Count VI: | Violation of PMWA Unpaid Minimum Wages (Plaintiff Bedolla) |

**IV.     Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), this Court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).[3]

## V. The Motion to Dismiss

Defendants' Motion to Dismiss pursues a single argument with respect to a single Defendant. Specifically, Defendant BC seeks dismissal on the grounds that Plaintiff has not adequately alleged a joint employment relationship with respect to BC. Defendants do not seek dismissal of any of the six counts against Defendant Brandolini.[4] Therefore, this Court is tasked with determining only one question: Does the Amended Complaint adequately allege that Defendant BC was a joint employer of Plaintiffs?

## VI. Relevant Statutes

### A. Fair Labor Standards Act (Counts One, Three, and Five)

Counts One, Three, and Five of the Complaint are brought under the FLSA, which was enacted to "govern the maintenance of standard hour and wage practices." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 305-06 (3d Cir. 2003). Specifically, the FLSA "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1527 (2013). Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for

---

[3] Here, Plaintiff attaches several Exhibits to his Amended Complaint, so they may properly be considered by the Court in resolving the Motion to Dismiss.

[4] Despite failing to make a single argument for dismissal of the claims against Defendant Brandolini, in a footnote, Defendants "request[] this Court to order Plaintiffs to file a second amended complaint so the remaining allegations are clear and Mr. Brandolini can formulate a response." (MTD, at 5 n.1) (note that Defendant's memorandum lacks any page numbers, so the numbers used in this Court's citations reflect the page numbers as stated on ECF). This Court declines to require Plaintiffs to re-file their Amended Complaint against Defendant Brandolini, given the absence of any grounds justifying the complete dismissal of Plaintiffs' allegations, and the fact that Defendant Brandolini has already declared under penalty of perjury that "Plaintiffs were at all times employed by me personally." (See AC ¶ 18) (citing ECF 3, First MTD, Ex. 1 ¶ 10)).

work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." De Asencio, 342 F.3d at 306.

An employer who violates § 206 or § 207 is subject to § 216(b), which provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

"Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite simple and straightforward." Harris v. Scriptfleet, Inc., 11-cv-4561, SRC, 2011 WL 6072020, at *3 (D.N.J. Dec. 6, 2011) (citing Sec'y of Labor v. Labbe, 319 Fed. App'x. 761, 763 (11th Cir. 2008). To state a *prima facie* claim under the FLSA, a plaintiff must allege that: (1) the plaintiff was an "employee," as defined by the FLSA; (2) the defendant was "engaged in commerce," as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week. See 29 U.S.C. § 216(b); Mell v. GNC Corp., 10–cv–945, 2010 WL 4668966, at * 5 (W.D. Pa. Nov. 9, 2010).

The FLSA also contains an anti-retaliation provision that makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" alleging a violation of the FLSA. See 29 U.S.C. § 215. "To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that '(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and

employer's adverse action.'" Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 813 (E.D. Pa. 2015) (quoting Scholly v. JMK Plastering, Inc., No. 07-cv-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008)); accord Lancaster v. PJM Interconnection, LLC, No. 16-cv-842, 2016 WL 4394365, at *4 (E.D. Pa. Aug. 16, 2016) (citing Preobrazhenskaya v. Mercy Hall Infirmary, 71 Fed. App'x. 936, 939 (3d Cir. 2003)).

Within the meaning of the FLSA, protected activity includes "fil[ing] any complaint or institute[ing] or caus[ing] to be instituted any proceeding under or related to [the FLSA]." Jones, 95 F. Supp. 3d at 814 (citing 29 U.S.C. § 215(a)(3)). The United States Supreme Court clarified what constitutes a "complaint" under the FLSA in Kasten v. Saint-Gobain Performance Plastics. 563 U.S. 1 (2011). The Supreme Court held that a formal written complaint is not required; rather, an informal oral complaint made by an employee to a supervisor constitutes protected activity within the meaning of the statute. See Kasten, 563 U.S. at 17. However, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights and a call for their protection." Kasten, 563 U.S. at 14. The central holding of Kasten is that no particular form of complaint is required, as long as a "reasonable, objective person would have understood the employee to have put the employer on notice of an assertion of rights." Id.

### B.  Pennsylvania Minimum Wage Act (Counts Four and Six)

Similar to the wording in the minimum wage standard set forth in the FLSA guidelines, the PMWA states that "[e]very employer shall pay to each of his or her employees wages for all hours worked at a rate of not less than . . . [s]even dollars fifteen cents ($7.15) an hour beginning July 1, 2007." 43 Pa. Stat. § 333.104(a) (8); see Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 612–13 (E.D. Pa. 2015). Additionally, "[e]mployes shall be paid for overtime not less than one

7

and one-half times the employee's regular rate . . . for hours in excess of forty hours in a workweek." Id. § 333.104(c).

Because the PMWA "substantially parallels" the FLSA, see 43 Pa. Stat. Ann. § 333.104(a), (c), federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA. See, e.g., Ford-Greene, 106 F. Supp. 3d at 610–13 (applying the Third Circuit's analysis in Davis to the plaintiff's claims under both the FLSA and PMWA); Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S., 15-cv-5621, 2016 WL 1086709, at *5-6 (E.D. Pa. Mar. 21, 2016) (same).

## VII. Employer-Employee Relationship

The "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an employee as "any individual employed by an employer." Id. § 203(e)(1). Under the FLSA, to employ means "to suffer or permit to work." Id. § 203(g).

### a) Parties' Contentions

As noted, supra, the only argument presented by Defendants in their Rule 12 motion is that Plaintiffs failed to adequately allege that BC is their joint employer. If Defendant BC were correct, then Counts One, Three, Four, Five, and Six (brought pursuant to the FLSA and PWMA) would have to be dismissed vis-à-vis BC, because each of those five counts requires, as a statutory matter, that the plaintiffs be "employees" of the defendant.

In the Motion to Dismiss, Defendants contend the allegations contained in the Amended Complaint are insufficient to state a claim that BC was a joint employer of Plaintiffs. Defendants offer the following facts as support for this contention:

- Plaintiffs worked only as landscapers, and only at Brandolini's family residences;
- Plaintiffs' paystubs name Brandolini as their employer;
- Plaintiffs make no allegations that the residences were owned by BC, that Plaintiffs worked at locations owned by BC, that Plaintiffs were subjected to the work rules of BC, or that their vacation or benefits were determined in accordance with the policies of BC;
- Plaintiffs' work was directed entirely by Brandolini and his immediate family members; and,
- All other assertions are mere argument without any factual basis

In their Response, Plaintiffs state that there are various indicia of BC "exerting significant control" over them such that BC was their joint employer:

- Brandolini was head of BC and he hired Plaintiffs
- Plaintiffs' compensation and payroll information was with BC
- Plaintiffs' paystubs list BC's address
- BC's logo was on the shirts and jackets that Defendants required them to wear
- BC maintained their employment records
- BC either required or permitted Brandolini to use its corporate offices and administrative staff for payroll purposes

### b) Applicable Law

"In the Third Circuit, courts determining whether a worker is an employee or an independent contractor for purposes of the FLSA look to the economic realities of the relationship between the alleged employer and employee." Verma v. 3001 Castor, Inc., 13-cv-3034, 2014 WL 2957453, at *4 (E.D. Pa. June 30, 2014) (quoting Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382-83 (3d Cir. 1985)). In ascertaining the "economic realities" of the relationship, the following factors should be considered:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; [and]
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

Donovan, 757 F.2d at 1382-83. Courts applying the Donovan factors are admonished that "[n]either the presence nor absence of any particular factor is dispositive," and to consider whether, "as a matter of economic reality, the individuals are dependent upon the business to which they render service." Id. at 1382.

The standard for evaluating a joint employment claim in the Third Circuit was laid out in In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 683 F.3d 462 (3d Cir. 2012). The court located the "starting point" for this analysis with N.L.R.B. v. Browning-Ferris Indus. of PA., 691 F.2d 1117, 1123 (3d Cir. 1982): "'where two or more employers exert significant control over the same employees—whether from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' under the FLSA.'" In re Enterprise Rent-A-Car, 683 F.3d at 468 (quoting Browning-Ferris, 691 F.2d at 1124). The court recognized "significant control" exercised by the employer as the hallmark of an employment relationship, rejecting the need for a finding of "ultimate control" and indicating that even "indirect" control "may be sufficient." In re Enterprise Rent-A-Car, 683 F.3d at 468. The court identified four factors to be considered in evaluating alleged employer-employee relationships in the joint employment context:

> 1) The alleged employer's authority to hire and fire the relevant employees;

10

2) The alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;

3) The alleged employer's involvement in day-to-day employee supervision, including employee discipline; and

4) The alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

The court emphasized that "this list is not exhaustive," but rather that courts should look to "the total employment situation and the economic realities of the work relationship…including evidence that does not fall neatly within one of the [four] factors." In re Enterprise Rent-A-Car, 683 F.3d at 469.

### c) Discussion

First, Plaintiffs have alleged facts from which it can be inferred that BC possessed authority to hire and fire the relevant employees, as Plaintiffs' pay stubs indicate BC's address and Plaintiffs allege that the payroll system was administered by BC employees (Enterprise factor 1). Plaintiff has also alleged facts indicating that BC possessed control of employee payroll records (factor 4). As for the overarching question—whether the alleged employers exercised "substantial control"—Plaintiffs allege that BC "required or permitted" Brandolini to use shirts and jackets bearing its logo for Plaintiffs to wear while working, that this amounted to "requiring . . . Plaintiffs to hold themselves out to the world as employees of the former." (Id. ¶¶ 50-51).[5] Thus, when taken in the light most favorable to Plaintiffs, the allegations do not fail to state a claim that BC exerted "significant control" over them. The facts alleged are sufficient at this stage in the litigation to proceed on a joint employment theory against both Brandolini and BC.

---

[5] Plaintiffs have presented photographs of logoed shirts in their possession, as well as employment records showing BC's address and alleged payroll system.

### 2. Engaged in Commerce

To make out a claim for violation of the FLSA, plaintiffs must also establish that they were employees who were "covered" by the FLSA's overtime wage provision and minimum wage provisions. The FLSA extends coverage to employees by two means: (1) the employee himself may be engaged in commerce or in the production of goods for commerce (so-called "individual" coverage), see 29 U .S.C. § 207(a)(1)(1); or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce (so-called "enterprise coverage."), see 29 U.S.C. § 203(s)(1). See Genarie v. PRD Mgmt., Inc., No. 04-cv-2082 (JBS), 2006 WL 436733, at *5 (D.N.J. Feb. 17, 2006). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Courts in this Circuit frequently hold that alleging that the defendant was an enterprise engaged in commerce under the FLSA "[i]s sufficient for purposes of a motion to dismiss." Dong v. Ren's Garden, 09-cv-5642 (MLC), 2010 WL 1133482, at *4 (D.N.J. Mar. 22, 2010) (internal citations omitted); see also Zebroski v. Gouak, No. 09-1857, 2009 WL 2950813, at *1 (E.D. Pa. Sept. 9, 2006).

Defendants do not contest, and thus concede, this issue.

### B. Overtime Allegations (Count Three)

The Court next addresses whether, in Count Three of the Complaint, Plaintiffs have alleged facts sufficient to state a claim for failure to pay overtime wages, in violation of the FLSA.

The leading case in the Third Circuit regarding the sufficiency of FLSA overtime wage allegations is Davis v. Abington Memorial Hospital, 765 F.3d 236 (3d Cir. 2014). In that case, adopting what it called a "middle-ground approach," the Third Circuit held that plaintiffs are not required to provide exact dates and times that they worked overtime to survive a motion to

dismiss. Davis, 765 F.3d at 241. However, plaintiffs must "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts, so that the allegations concerning a typical forty-hour week *include* an assertion that the employee worked additional hours during such a week." Id. at 243 n.7 (emphasis added); Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 610 (E.D. Pa. 2015). In sum, "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Davis, 765 F.3d at 243 (citations omitted).

To illustrate, in Davis, the Third Circuit held that the plaintiffs' allegations that they "typically" worked at least forty hours a week, and also "frequently" worked during meal breaks or outside their scheduled shifts were insufficient. Id. That is, because the plaintiffs did not allege that they worked extra hours during an already forty-hour week, they had not stated a claim for unpaid overtime wages under the FLSA. Id.

Defendants do not contest, and thus concede, this issue.

### C. Minimum Wage Allegations (Count Five)

The Court next turns to whether Count Five of the Complaint adequately alleges that Defendants failed to pay Plaintiffs the minimum wage of $7.25 per hour, as required by the FLSA. See 29 U.S.C. 206(a)(1)(C).

"An employee cannot state a claim for minimum wage violations 'unless [his] average hourly wage falls below the federal minimum wage.'" Johnson v. Equinox Holdings, Inc., No. 13-cv-6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (quoting Lundy v. Catholic Health Sys. Of Long Island, Inc., 711 F.3d 106, 115 (2d Cir. 2013). A plaintiff's average hourly wage is determined "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was

paid."  29 CFR § 778.109.  Unlike claims brought pursuant to the overtime provision of the FLSA, the Third Circuit has not specifically addressed the level of specificity required to plead a minimum wage claim under the FLSA.

Courts in this Circuit have noted that the rationale for why plaintiffs are not required to allege specific facts regarding wages earned and hours worked is that the FLSA requires employers to keep records of the "wages, hours, and other conditions and practice" of its employees.  28 U.S.C. 211(c).  Indeed, regulations advanced pursuant to Section 11(c) of the FLSA require employers to keep, inter alia, payroll records of the following: 1) hours worked per day; 2) total hours worked per week; 3) total daily or weekly straight-time earnings; and 4) total premium pay for overtime hours.  See 29 C.F.R. 516.2; see also Williams v. Tri-County Growers, Inc., 747 F.2d 121, 127 (3d Cir. 1984).  In light of this burden, "it cannot be the case that a plaintiff must plead specific instances of unpaid overtime or minimum wage violations before being allowed to proceed to discovery to access the employer's records."  Scriptfleet, 2011 WL 6072020, at *3.

Defendants do not contest, and thus concede, this issue.

### D.  Unlawful Retaliation (Count V)

The FLSA contains an anti-retaliation provision that makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" alleging a violation of the FLSA.  See 29 U.S.C. § 215.  "To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that '(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action.'"  Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 813 (E.D. Pa. 2015) (quoting Scholly v. JMK Plastering, Inc., No. 07-cv-4998, 2008 WL 2579729, at *3 (E.D.

14

Pa. June 25, 2008)); accord Lancaster v. PJM Interconnection, LLC, No. 16-cv-842, 2016 WL 4394365, at *4 (E.D. Pa. Aug. 16, 2016) (citing Preobrazhenskaya v. Mercy Hall Infirmary, 71 Fed. App'x. 936, 939 (3d Cir. 2003)).

Within the meaning of the FLSA, protected activity includes "fil[ing] any complaint or institute[ing] or caus[ing] to be instituted any proceeding under or related to [the FLSA]." Jones, 95 F. Supp. 3d at 814 (citing 29 U.S.C. § 215(a)(3)). The United States Supreme Court clarified what constitutes a "complaint" under the FLSA in Kasten v. Saint-Gobain Performance Plastics. 563 U.S. 1 (2011). The Supreme Court held that a formal written complaint is not required; rather, an informal oral complaint made by an employee to a supervisor constitutes protected activity within the meaning of the statute. See Kasten, 563 U.S. at 17. However, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights and a call for their protection." Kasten, 563 U.S. at 14. The central holding of Kasten is that no particular form of complaint is required, as long as a "reasonable, objective person would have understood the employee to have put the employer on notice of an assertion of rights." Id.

Defendants do not contest, and thus concede, this issue.

**VIII.   Intention Infliction of Emotional Distress (Count Two)**

To recover for the Pennsylvania tort of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant's conduct was: (1) extreme and outrageous; (2) intentional or reckless; and (3) the cause of severe or emotion distress to the plaintiff. Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Cmmw. Ct. 2010). "The [defendant's] conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); see also Barnett v. Sch. Dist. of

Lancaster, No. 14-cv-2414, 2015 WL 1312730, at *13 (E.D. Pa. Mar. 24, 2015). In addition, under Pennsylvania law, a plaintiff must demonstrate that he or she suffered "some type of resulting physical harm due to the defendant's outrageous conduct." Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (quoting Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004); see also Hallman v. Dep't of Human Servs., 630 Fed. App'x 123, 127 (3d Cir. 2015).[6]

Further, the United States Court of Appeals for the Third Circuit has found that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988).

Defendants do not contest, and thus concede, this issue.

### IX. Conclusion

The Motion to Dismiss will be DENIED.

O:\CIVIL 18\18-146 Bedolla v. Brandolini\Memo re MTD AC.docx

---

[6] There is at least one case in this District that would support the contention that physical harm need not be alleged to overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Ricker v. Weston, No. 99-5879, 2000 WL 1728506, at*5 n.17 (E.D. Pa. Nov. 21, 2000), reversed on other grounds by 27 Fed. App'x 113 (3d Cir. 2002). However, the weight of authority from the intermediate appellate courts in Pennsylvania is that intentional infliction of emotional distress requires a showing of physical injury. See, e.g., Fewell v. Besner, 664 A.2d 577, 582 (Pa. Super. Ct. 1995); Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994). Similarly, courts in this Circuit require physical injury. See, e.g., Short v. Chief Shawn Payne & Officer Parker, No. 15-5873, 2016 WL 1594791, at *4 (E.D. Pa. Apr. 20, 2016); Finn v. Porter's Pharm., No. 15-661, 2015 WL 5098657, at *5 (W.D. Pa. Aug. 31, 2015) (collecting cases).